Filed 2/11/21

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| In re D.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E073980 |
| Plaintiff and Respondent, | (Super.Ct.No. J280153) |
| v. | OPINION |
| D.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Pamela P. King and Christopher B. Marshall, Judges.  Reversed with directions.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant D.C. (minor) appeals from orders of the San Bernardino Superior Court sustaining the People's petition made pursuant to Welfare and Institutions Code section 602. The petition alleged minor carried a concealed dirk or dagger on his person in violation of Penal Code section 21310.[1] Minor argues, and the People concede, that reversal is called for because the juvenile court erred when it found the human trafficking affirmative defense set forth in Penal Code section 236.23 did not apply in his case. We agree the juvenile court erred but decline the parties' invitation to find the requirements of the defense were met. We will reverse and order a new hearing on the applicability of Penal Code section 236.23.

## BACKGROUND

When Welfare and Institutions Code section 602 proceedings were initiated in March 2019, minor was a 15-year-old dependent of the juvenile court who had been running away from home and living on the streets since he was about 12 years of age.

Not long after he began living on the streets, minor met an older man named Mike. Mike established a relationship with minor, taking minor to his home in Riverside, allowing minor to live in the home at one time, and giving minor drugs in exchange for sex. Mike knew where to find minor on the streets.

Mike experienced a lot of drug rages. In the course of at least a few of those rages, he put minor in the trunk of his car and drove around, took minor into the backseat for sex,

---

[1] All statutory references herein are to the Penal Code unless otherwise indicated.

2

and gave him methamphetamine.  The rages scared minor and caused him to be afraid that Mike might injure or kill him.

In the course of a rage incident in March 2019, Mike put minor in the trunk and drove around.  He eventually left minor in Loma Linda with the caution that he knew where minor hung out and would return "in a little bit" to pick him up.  The following day, minor found a knife while rummaging in a trash can.  He took the knife and thought he could use it to prevent Mike from putting him in the trunk again.

Later that day, minor was hanging around in front of a convenience store asking people for money and cigarettes.  His nose and mouth were covered with a medical mask, and he was wearing a sweatshirt with the hood pulled up over his head.  The store's owner saw a large knife in minor's hand before minor hid it under his clothes.  Although minor did not threaten anyone, the owner called the police when he noticed potential shoppers drive up to the store and then leave without getting out of their cars.  Search of minor by the responding police officer revealed a Bowie knife approximately 14 inches long concealed out of view under minor's sweatshirt.

At the conclusion of the July 2019 contested hearing on jurisdiction, the juvenile court found minor violated Penal Code section 21310 by carrying a concealed dirk or dagger on his person and sustained the Welfare and Institutions Code section 602 petition.  It rejected the human trafficking defense on the ground there was no evidence that Mike coerced minor to commit the violation, noting that Mike did not even know the weapon

3

existed and could not have known that minor had it in his possession. The violation was reduced to a misdemeanor, and minor was placed on nonward probation.

Minor violated probation by disappearing and was later found in the company of an older man. The court lifted probation and declared minor a ward. It ordered him detained in juvenile hall until a suitable placement could be found for him. The court found the total available confinement time for minor was one year with confinement credit of 100 days. Thereafter, minor's dependency case was dismissed. Minor appealed.

## DISCUSSION

Section 236.23 provides an affirmative defense to a crime that is not serious or violent if the person accused establishes by a preponderance of evidence that he or she was "coerced to commit the offense as a direct result of being a human trafficking victim at the time of the offense and had a reasonable fear of harm." (§ 236.23, subds. (a), (b).)

On appeal, minor and the People argue the burden was met here, and the juvenile court erred when it found the defense does not apply in the absence of evidence that the trafficker directly coerced the accused to commit the specific offense. We will reverse for a new hearing consistent with the views expressed in this opinion.

*The question of the trafficker's knowledge evidencing coercion*

When making its ruling on the applicability of the human trafficking defense, the court stated: "For this defense to apply, I believe I have to find that [minor] was coerced to commit this offense by his trafficker. That's not the case. . . . [Minor] planned on using this knife should Mike try to put him in the car in the future. . . . So Mike didn't even have any

4

knowledge of this knife. [¶] So how can Mike be coercing [minor] to commit this offense of carrying a concealed dirk or dagger? He didn't even know it existed, didn't know that [minor] had it."

As a general rule, we limit our review to the correctness of the trial court's ruling, not the reasons stated for its decision. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145.) But that rule does not apply in cases like the present one in which the court's remarks unambiguously reveal that its ruling was bottomed on a misunderstanding of the applicable law. (*People v. Penoli* (1996) 46 Cal.App.4th 298, 305-306.)

The question whether the defense will apply only if the trafficker directly coerced the trafficking victim to commit the particular crime is a question of law of first impression, which we review de novo. (*In re R.T.* (2017) 3 Cal.5th 622, 627 (*R.T.*) [question of statutory construction is reviewed de novo].)

The principles of statutory construction call for beginning our analysis with the statute's words, which are "the most reliable indicator of legislative intent." (*R.T.*, *supra*, 3 Cal.5th at p. 627.) The words are to be interpreted "in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose." (*Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 293.) Giving effect to that purpose is our "foremost task." (*Ibid.*) If the language in the statute is unambiguous and clear, construction of it is not necessary, and there is no need to

5

rely on indicia of the Legislature's intent. (*Lungren v. Deukmejian* (1988) 45 Cal.3rd 727, 735.)

Section 236.23 applies if four elements are met: (i) the accused was a victim of human trafficking at the time the offense was committed, (ii) the accused was coerced to commit the offense as a direct result of being a human trafficking victim, (iii) the accused had a reasonable fear of harm when the offense was committed, and (iv) the offense was not a serious felony as defined by section 1192.7, or a violent felony coming within subdivision (c) of section 667.5, or a violation of section 236.1. (§ 236.23, subd. (a).) There is no requirement that the accused act at the behest of the trafficker or that the trafficker be aware that the victim was planning or had committed a crime. Rather, the coercion suffered by the accused must result directly from his status as a victim. That coercion may, but need not, be provided directly by the trafficker.

That section 236.23 does not require a showing that the accused was coerced directly by the trafficker to commit the specific crime is supported by the definitions set forth in subdivision (h) of section 236.1. Those definitions are applicable to all the human trafficking provisions contained in Chapter 8 of Title 8 of the Penal Code, including section 236.23. (§ 236.1, subd. (h).) Subdivision (h)(1) defines " 'Coercion' " as including "a scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person." (§ 236.1, subd. (h)(1).)

6

When the definition of coercion is read together with section 236.23, it is evident that the accused's reasonable fear of suffering harm as a result of the trafficker's scheme, plan, or pattern establishes the required showing of coercion to commit the offense as a direct result of being a human trafficking victim. The provision does not require the trafficker to have direct involvement in, or even knowledge of, the minor's crime for the defense to apply. Accordingly, the trial court misunderstood the statute when it rejected the defense on the grounds that Mike had not directly coerced minor to commit the specific offense and did not know minor had the knife. If, on remand, the juvenile court finds by a preponderance of evidence that minor was a trafficking victim at the time he committed the nonviolent, nonserious offense, and that he concealed the knife on his person on account of a reasonable fear that Mike would find him and once again force him into the trunk of the car, then the trafficking defense must be applied.

*The application of Penal Code section 236.23 to minor's offense*

Minor argues substantial evidence supports the application of the human trafficking defense in this case and, based on that conclusion, urges us to reverse the juvenile court's true finding on the Welfare and Institutions Code 602 petition, order the petition dismissed, and instruct the juvenile court to seal minor's records. The People agree with minor and suggests we find the juvenile court implicitly concluded minor was a trafficking victim.

When reviewing a trial court's express or implied failure of proof finding, we do not employ the sufficient evidence standard of review. Rather, we review the record to determine whether the evidence presented at trial compels a finding in favor of the appellant

7

as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570-571; *In re M.D.* (2014) 231 Cal.App.4th 993, 1002.) The appellant must demonstrate that his affirmative evidence was uncontradicted and unimpeached and of such character and weight that there is no room for a trial court determination that it was insufficient to support a finding in the appellant's favor. (*Ibid.*)

Minor argues the evidence demonstrates that he was a trafficking victim, was coerced to carry the knife as a direct result of that status, and had a reasonable fear of harm. We agree there is evidence to support that theory but note there is contrary evidence so that we cannot find the record compels a finding in minor's favor. For example, a social worker employed by the San Bernardino County Public Defender's Office and assigned to the Coalition Against Sexual Exploitation (CASE) testified minor had been deemed a trafficking victim and referred to the CASE team. On the other hand, a detective employed by Redlands Police Department and assigned to the sheriff's human trafficking task force testified that minor had endured hardship and abuse, but he did not come within the definition of a trafficking victim. In addition, the court expressed concerns about the credibility of minor's testimony generally and, in particular, his testimony concerning whether he was afraid of Mike. Accordingly, we cannot on this record conclude the elements of the section 236.23 defense were established as a matter of law.

The People posit we may infer an implicit finding as to minor's status because the court "expressly and repeatedly" described minor as a human trafficking victim. While it is true the court made references to "information" that the minor was a victim of human

8

trafficking prior to the hearing on jurisdiction, it did not find that he was, in fact, a trafficking victim.  It is also true that a month after asserting jurisdiction, the court discussed the trafficking issue in the course of detaining minor because he violated his nonward probation.  It recalled that at the jurisdiction hearing, there had been "significant evidence *to suggest* that the minor, when he's in the community, is a victim of human trafficking and that he on occasion fears for his own safety because of that relationship," but it "did not find that all elements of that defense were met."  (Italics added.)  Those remarks do not provide sufficient fodder to support the conclusion that the juvenile court made an implicit finding that minor was a trafficking victim.

## DISPOSITION

The juvenile court's orders from the July 9, 2019 contested jurisdictional hearing are reversed.  The juvenile court is ordered to hold a new hearing on the applicability of Penal Code section 236.23 in light of the views expressed in this opinion.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:

MILLER
J.

FIELDS
J.

9